AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Louisiana

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>(1) BLACK APPLE IPHONE 7 IN A BLACK PROTECTIVE CASE AND<br>(1) GREY CELLULAR FLIP PHONE, IMEI: 015411000443970, ASSIGNED TELEPHONE<br>NUMBER 504.618.6824, BOTH CURRENTLY LOCATED AT THE ATF, NEW ORLEANS<br>FIELD DIVISION OFFICE, 1 GALLERIA BLVD., SUITE 1800, METAIRIE, LA 70001 | )<br>)<br>)<br>)<br>)<br>)   Case No.  19-mc-12292 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment "A"

located in the _____Eastern_____ District of _____Louisiana_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1512(b) and (d)   Witness Tampering | |

The application is based on these facts:

See Affidavit attached.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Ryan Krummel, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  Aug. 28, 2019

City and state:  New Orleans, Louisiana

_____
*Judge's signature*

Honorable Karen Wells Roby, Chief, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

The property to be searched is:

(1) BLACK APPLE IPHONE 7 IN A BLACK PROTECTIVE CASE, and

(1) GREY CELLULAR FLIP PHONE, IMEI: 015411000443970, ASSIGNED TELEPHONE NUMBER 504.618.6824,

BOTH CURRENTLY LOCATED AT ATF NEW ORLEANS FIELD DIVISION OFFICE LOCATED AT 1 GALLERIA BLVD., SUITE 1800, METAIRIE, LA 70001.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

### Particular Things to be Seized

1.  All records on the Devices described in Attachment A that relate to violations of 18

    U.S.C. §§ 1512(b) and (d), Witness Tampering including:

    a.  Evidence of user attribution showing who used or owned the Devices at the time the

        things described in this warrant were created, edited, or deleted, such as logs,

        phonebooks, saved usernames and passwords, documents, and browsing history;

    b.  Records of Internet Protocol addresses used; and

    c.  Information and correspondence pertaining to the planning or execution of this crime,

        including but not limited to any and all photographs, text messages, call logs, address

        books, emails, Global Positioning System (GPS) information, contacts, still

        photographs, moving videos, audio files, dates and appointments, calendars, accessing

        and downloading information from the Internet.

As used above, the terms "records" and "information" include all of the foregoing items of

evidence in whatever form and by whatever means they may have been created or stored, including

any form of computer or electronic storage (such as flash memory or other media that can store

data, including but not limited to micro SD cards) and any photographic form.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br><br>**(1) BLACK APPLE IPHONE 7 IN A BLACK PROTECTIVE CASE AND**<br><br>**(1) GREY CELLULAR FLIP PHONE, IMEI: 015411000443970, ASSIGNED TELEPHONE NUMBER 504.618.6824,**<br><br>**BOTH CURRENTLY LOCATED AT THE ATF, NEW ORLEANS FIELD DIVISION OFFICE, 1 GALLERIA BLVD., SUITE 1800, METAIRIE, LA 70001** | **Case No. 19-mc-12292** |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION
## <u>UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE</u>

I, Ryan Krummel, Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), being first duly sworn, hereby depose and state as follows:

### <u>INTRODUCTION AND AGENT BACKGROUND</u>

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I, Ryan Krummel, being duly sworn, state that I am a Special Agent (hereinafter "SA") with the United States Bureau of Alcohol, Tobacco, Firearms and Explosives (hereinafter "ATF") and have been so employed for three years. I am currently stationed in the New Orleans,

Louisiana, Field Office. I am a law enforcement officer of the United States within the means of Title 18, United States Code, Section 2510(7). I was trained as an ATF Special Agent at the Federal Law Enforcement Training Center in Glynco, Georgia from August 2016 to December 2016. During such time, I received specific training in the areas of firearms, narcotics, explosives and arson investigations. I have approximately 15 years of law enforcement experience to include over 7 years of local law enforcement and 5 years as a Special Agent with the United States Secret Service. My experience, as well as my consultation with other law enforcement officers, will serve as the basis for any opinions or conclusions set forth below.

3.     As an ATF SA, my employment and training specializes in federal investigations involving alcohol and tobacco diversion, federal firearms violations, federal explosives violations, and federal arson violations, as well as the distribution of controlled substances. During these investigations, I have participated in physical surveillance operations and have participated in the execution of federal arrest and search warrants. In addition to utilizing the aforementioned investigative techniques, I have been required during these investigations to analyze information resulting from traditional record searches, as well as reviewing previous case files. I make this affidavit in my official capacity as a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).

4.     This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## <u>IDENTIFICATION OF THE DEVICES TO BE EXAMINED</u>

The property to be searched is described as:

(1) BLACK APPLE IPHONE 7 IN A BLACK PROTECTIVE CASE, and

(1) GREY CELLULAR FLIP PHONE, IMEI: 015411000443970, ASSIGNED TELEPHONE

NUMBER 504.618.6824,

hereinafter "the Devices."

      The Devices are currently located in the evidence vault of ATF New Orleans Field Division

Office at 1 Galleria Blvd., Suite 1800, Metairie, LA 70001.

      The applied-for warrant would authorize the forensic examination of the Devices for the

purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

      5.     The United States, including Bureau of Alcohol, Tobacco, Firearms and Explosives

(ATF), is conducting a criminal investigation of Michael Conner and potential unidentified

subjects regarding possible violations of 18 U.S.C. §§ 1512(b) and (d), Witness Tampering,

through the use of the Target Cell Phone.

      6.     A lengthy investigation conducted by the ATF, Kenner Police Department, and the

New Orleans Police Department resulted in the indictment and arrest of four defendants in the

Eastern District of Louisiana for violations of federal firearms laws and Hobbs Act Robbery, in

case numbers: 18-241 "J" and 18-253 "H."

      7.     While awaiting trial, the defendants, through their attorneys, were provided with

copies of investigative reports that revealed steps taken to ultimately build the case against each

defendant. Within the provided investigative reports were specific statements provided to law

enforcement that revealed name(s) of the individual(s) and the dates that the information was

provided. In some reports the defendants that provided information were listed specifically by their

name and their alias, making no mistake as to the identity of the individual.

3

8.    On July 24, 2019, Detective Zachary Dubourg of the Kenner Police Department provided your affiant with a screen capture from the social media application Instagram depicting the page operated by mikeee_31st. In a post that took place presumably on July 24, 2019, mikeee_31st posted a picture of what appears to be an ATF report of investigation, with the content clearly legible. That post is titled "Big rats" with a laughing face. The legible content clearly spells out who law enforcement spoke to and when, the involvement in the crimes alleged in the indictments, all of the co-conspirators, and an additional person of interest. The information also reveals the name of another potential defendant that was known to purchase firearms for several members of the organization.



9.     Based on my training and experience, I know that titling the Instagram post "Big rats" likely means that those listed in the investigative report cooperated with law enforcement throughout the investigation. Moreover, cooperating with law enforcement is not viewed kindly by all members of society and law enforcement has an obligation to protect those that voluntarily cooperate in these circumstances. Secrecy of the information they provide and their identity is a priority.

10.     Consequently, the post presents an enormous safety risk for those named defendants and their families. Based on my training and experience, I believe probable cause exists to conclude that the Instagram post was likely made in an attempt to alter the testimony of, or otherwise influence or intimidate, those cooperating in this investigation.

11.     Additionally, recorded jail conversations revealed individuals related to Treyvon Tobias (the individual referenced in the photo of the ATF report) have explained that they are being cautious after the release of the Instagram post. With the assistance of the Kenner Police Department (hereinafter "KPD") and ATF intelligence unit, "mikeee_31st" has been identified as Michael Conner. Conner appears to be the owner of the Instagram account: mikeee_31st because the account features a public photo of Conner holding what appears to be U.S. currency as its profile photo. A recent booking photo of Conner was compared to the profile photo and they appear to be the same person. Additionally, as detailed below, Conner is believed to reside on 31st St. in Kenner, Louisiana, consistent with the handle "mikeee_31st".

12.     Through investigative tactics used by ATF intelligence they were able to identify a phone number for Conner as 504.339.0586, a T-Mobile subscriber. Conner provided that number to law enforcement during an arrest that took place on July 8, 2019. Further intelligence revealed addresses associated with Conner as 1010 31st St., Kenner, LA. Additionally, information provided

5

by Instagram revealed that Instagram account mikeee_31st was activated with cellular number 504.339.0586.

13.    A subpoena return from T-Mobile revealed that the registered user of phone number 504.339.0586 had service effective from December 22, 2018 through July 24, 2019. The termination date of cellular number 504.339.0586 coincides with the date of the Instagram post in question, indicating Conner may have tried to distance himself from the post immediately after.

14.    On Friday July 26, 2019, without knowing the cellular account had been terminated, a federal search warrant was obtained and executed against T-Mobile in an effort to gather location data on the cellular phone operating with identified phone number 504.339.0586.

15.    With the assistance of KPD Narcotics Division Detective Keenan Jackson, a new telephone number was obtained for Conner. That number was identified as 504.618.6824, an AT&T subscriber.

16.    On August 1, 2019, KPD Detective Jackson conducted a controlled purchase of narcotics using a confidential informant, contacting Conner at 504.618.6824. The purchase was successful and Conner was followed back to a residence identified as 1010 31st Kenner, LA at the conclusion of the purchase. Armed with that information, KPD Narcotics investigation Division initiated physical surveillance of 1010 31st Kenner, LA for several days. During the surveillance, Conner was observed entering and exiting the residence.

17.    On August 6, 2019, a federal search warrant was obtained and executed upon AT&T in an effort to gather location data on the cellular phone operating with identified phone number 504.618.6824.

18.     On August 22, 2019, your affiant observed Conner in the 3100 block of Loyola Dr. with two unidentified subjects. The location was consistent with the information provided by AT&T. During the surveillance of Conner and the unknown subjects, they were observed by ATF SA's interacting with several individuals and conducting what appeared to be hand to hand drug transactions.

19.     Conner and the other two subjects were observed in and around a vehicle during the suspected narcotics transactions. As that vehicle departed the area, a Kenner Police Department marked unit arrived in the area to contact the subjects to include Conner. As the marked unit came into view, Conner drove the vehicle directly into a parking space at an open business in the 3100 block of Loyola Dr. and all the occupants immediately vacated the car. Your affiant was parked in the same parking lot that Conner parked in and witnessed the subjects exit the vehicle in a hurry. Your affiant observed the subjects note the position of the marked unit and then observed one of the subjects discard an object behind a garbage can. The subjects then walked away from the vehicle and stood in front of a closed business in an effort to deter the police officer from making contact with them.

20.     Your affiant maintained visual coverage on the discarded item and confirmed it was a clear plastic bag that contained small rock like objects, consistent with crack cocaine. The item(s) were eventually recovered by the Kenner Police Department. The subjects attempted to return to the vehicle several times, only to eventually flee the area due to the police presence, leaving the vehicle and the discarded item in the parking lot. That vehicle was towed and the subject of a state search warrant later on August 22, 2019. A firearm, narcotics and an identification card with the name of Michael Conner were recovered from the vehicle.

21.     Continuing on August 22, 2019, the subjects were located by Kenner Police in the 3100 block of Marietta St. Kenner, LA. A Kenner officer approached a porch that Conner and two other subjects were sitting on. The officer believed that this was not a porch affiliated with any of the subjects. The officer asked them to leave the porch area and Conner was subsequently detained based on outstanding attachments. The officer observed Conner take two phones on his lap and place them on a chair or seat in the porch area prior to engaging with the officer. Your affiant arrived on scene and spoke to Conner as to the location of his cellular device. Conner stated he was unaware of the location of his cellular phone and could not recall his phone number. At that time, a Kenner officer approached holding the two cellular phones left on the porch. The two phones are described in this warrant as the Devices. Conner claimed ownership of the Apple iPhone, but denied ownership of the flip phone. Your affiant dialed *67 504.618.6824 and the flip phone immediately began to ring. With the aforementioned information, your affiant believes that both of the described phones belong to Conner. Both phones were taken and a property receipt was provided to Conner.

22.     Based on the evidence submitted in this affidavit and considering Conner's attempt to elude and confuse law enforcement by denying knowledge of his phone numbers or ownership of one of the Devices, your affiant believes that each of the phones contain evidence of committed crimes (18 U.S.C. §§ 1512(b) and (d), Witness Tampering) or information such as passwords that could be used to link him to social media accounts.

23.     Your affiant believes that the photo of the internal document mentioned in this affidavit was likely posted to Instagram with Conner's cellular phone and Conner attempted to distance himself from the post by terminating the number and reactivating a new cellular number. Your affiant believes that although Conner obtained a new cellular carrier, he may

8

continue to use his previous device, may have transferred his data to the latest device, and maintains two cellular phones to evade law enforcement. Additionally, the Instagram account for "mikeee_31st" has been active as of August 13, 2019. Evidence of that account activity will likely be found on the Devices.

## TECHNICAL TERMS

24.     Based on my training and experience, your Affiant uses the following technical terms to convey the following meanings:

    a.      Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the devices.

    b.      Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety

9

of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.      Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.      GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence

of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.      PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the devices.

f.      IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service

providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g.      Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

25.      Based on my training, experience, and research, your Affiant knows that the Devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, PDA, and access the Internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the Devices.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

26.      Based on my knowledge, training, and experience, your Affiant knows that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the Devices. This information can sometimes be recovered with forensics tools.

27.      *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices

were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

    a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file that was once on a the storage medium, but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file.) Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

    b.    Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.      The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

28.      *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Devices to human inspection in order to determine whether it is evidence described by the warrant.

29.      *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, you Affiant submits there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

30.     Your Affiant submits that this affidavit supports probable cause for a search warrant

authorizing the examination of the Devices described in Attachment A to seek the items described

in Attachment B.

Ryan Krummel
Special Agent
Bureau of Alcohol, Tobacco,
   Firearms & Explosives

Subscribed to and sworn before
me on this ___ August, 2019.

**HONORABLE KAREN WELLS ROBY**
**CHIEF, UNITED STATES MAGISTRATE JUDGE**